UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:14-CV-337-GNS

JOYCE SON                                                                                                         PLAINTIFF

v.

BAPTIST HEALTHCARE AFFILIATES, INC. d/b/a
BAPTIST HEALTH LAGRANGE; and
JEANNE BARNES                                                                                              DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Motion for Summary Judgment filed by Defendants Baptist Healthcare Affiliates, Inc. d/b/a Baptist Health LaGrange ("Baptist") and Jeanne Barnes ("Barnes") (DN 38). The motion is been fully briefed and ripe for decision. For the foregoing reasons, the motion is **GRANTED.**

**I.      SUMMARY OF FACTS AND CLAIMS**

Joyce Son ("Son") was employed by Baptist as a medical assistant for 15 years prior to her termination on October 18, 2013. (Son Dep. 17:10-16, Nov. 6, 2014, DN 38-2). In June 2012, Son suffered a seizure outside of work. (Son Dep. 10:23-24, 11:17-12:3). After immediate care, she followed up with a specialist physician who diagnosed her with epilepsy. (Son Dep. 11:3-16). Son received medications to control the seizures and she continued to be able to carry out all the functions of her job without any work restrictions.[1] (Son Dep. 13:24-17:9, 21:15-22, 23:3-15).

---

[1] Among these medications was an emergency medicine she could take in the event she experienced an "aura." (Son Dep. 27:25-21). Auras refer to the sensation people may experience preceding a seizure. *See Arnold v. Barnhart*, 473 F.3d 816, 818 n.1 (7th Cir. 2007) (citation omitted).

1

She informed Barnes, her direct supervisor, of the epilepsy diagnosis in September 2012. (Son Dep. 17:21-18:5, 20:11-15). After Son informed Barnes of the seizure diagnosis, Barnes's attitude toward Son allegedly changed. (Son Dep. 18:11-13, 40:16-41:5). According to Son, Barnes's eye contact while speaking was less frequent, and she often seemed agitated. (Son Dep. 40:19-41:2). While she never voiced any concerns about the change in Barnes's attitude, Son began taping her work conversations in June 2013. (Son Dep. 41:11-22). Son did not perceive a change in attitude from Barnes' supervisor, Marsha Biven ("Biven"). (Son Dep. 47:22-24).

On October 17, 2013, Barnes and Biven met with Son to discuss some problems they had noticed with Son's work. (Son Dep. Ex. 3, DN 38-2). Perhaps attributable to the stress of this conversation, Son experienced an aura soon after the meeting and left work without notifying anyone of the reason for her departure. (Son Dep. 67:10-68:25, 72:15-74:2). Son did not contact Barnes and does not recall attempting to notify anyone else at work that she was leaving or why. (Son Dep. 68:11-21, 71:3-14, 73:24-74:23). She went home, took her emergency medication and slept for several hours. (Son Dep. 68:1-7). That evening, she returned to collect personal items from the hospital she feared might be discarded. (Son Dep. 83:6-85:10).

After she left, Son's co-worker called Barnes and Biven to inform them Son had walked out. (Biven Dep. 21:18-20, Feb. 4, 2015, DN 38-3). Biven faulted Son for leaving without any explanation despite seeing several co-workers as she left. (Biven Dep. 23:2-18). Her return to work to retrieve personal items was interpreted as cleaning out the workplace of her belongings. (Son Dep. Ex. 2 at 41, DN 38-2). The following day, October 18, 2015, Baptist terminated Son's employment for having "walked off the job." (Son Dep. Ex. 2 at 44; Son Dep. Ex. 7, DN 38-2).

Apparently unaware of her termination, Son reported to work on October 21, 2013, to request medical leave pursuant to the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§

2

2611-2654. (Son Dep. Ex. 2 at 39-40). When requesting leave, Son explained for the first time the reason for leaving work on October 17. (Son Dep. Ex. 2 at 40-44). She was then informed that she could not request FMLA leave due to her termination.[2] (Son Dep. Ex. 2 at 40).

Following her termination, Son filed suit against Defendants in Oldham Circuit Court asserting claims under the Kentucky Civil Rights Act ("KCRA"), KRS 344.010-344.990, against her employer and direct supervisor, Jeanne Barnes ("Barnes"), and the FMLA.[3] (Notice of Removal, Ex. 1, DN 1-2). Son claims her epilepsy rendered her disabled, and that Defendants discriminated against her because of her disability, retaliated against her for seeking an accommodation for her disability, and failed to provide reasonable accommodations. (Am. Compl. ¶ 23, DN 28). That lawsuit was removed to this Court on April 28, 2014. (Notice of Removal, DN 1).

## II. JURISDICTION

This Court has supplemental jurisdiction, 28 U.S.C. § 1367, via the dismissed federal claims. (Memo. Op. & Order Den. Mot. to Remand, DN 37).

## III. STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

---

[2] Son claims she made some attempts to contact her supervisors before this, though all attempts appear to have been after her termination paperwork was submitted. Son reports calling Barnes on October 18, 2013, but has no record of the call. (Son Dep. 65:22-66:13). She left a message with Barnes the following day, though asking only that Barnes return her call. (Son Dep. Ex. 2 at 39).

[3] In her Amended Complaint, Son withdrew her FMLA claim.

3

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact . . . ." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *See Harstel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The non-moving party must present affirmative evidence on critical issues sufficient to allow a jury to return a verdict in its favor. *See Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 403 (6th Cir. 1992) (citation omitted). This evidence must be more than a mere scintilla of evidence in support of her position. *See Hartsel*, 87 F.3d at 799 (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986)). The plaintiff may accomplish this by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1). Mere speculation will not suffice to defeat a motion for summary judgment; "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Moinette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996) (citation omitted). The nonmovant may not rest solely on allegations in the complaint, "but must come forward with some probative evidence to support its claim." *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994) (citations omitted).

## IV. DISCUSSION

### A. Termination Based Upon Disability

Son alleges that Defendants terminated her employment based upon her disability.[4] In their motion, Defendants argue that they are entitled to summary judgment on this claim.

---

[4] Kentucky courts generally rely upon federal case law addressing discrimination claims in interpreting the KCRA. *See Hallahan v. The Courier-Journal*, 138 S.W.3d 699, 706 (Ky. App. 2004). While it is not clear as to Son's specific theory, it appears that Son is alleging that she has

4

Because Son has failed to identify any direct evidence of discrimination, the Court will apply the burden-shifting paradigm articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to determine whether there is sufficient evidence based upon circumstantial evidence to proceed to trial.

### 1. *Son failed to prove a* **prima facie** *case of disability discrimination.*

Under *McDonnell Douglas*, Son must prove a *prima facie* case of disability discrimination. To meet her initial burden, Son must present evidence that: (i) she has disability; (ii) she was qualified for her position with or without a reasonable accommodation; (iii) Baptist took an adverse employment action against her; (iv) Baptist "knew or had reason to know of" Son's disability; and (v) "the disabled individual was replaced." *Macy v. Hopkins Cnty. Sch. Bd. of Educ.*, 484 F.3d 357, 365 (6th Cir. 2007) (internal quotation marks omitted) (citation omitted).

Son argues that she has met her burden because, *inter alia*, epilepsy is a *per se* disability. (Pl.'s Resp. to Mot. for Summ. J. 6, DN 42). The Equal Employment Opportunity Commission suggests that "it should easily be concluded that . . . epilepsy substantially limits neurological function [and qualifies as an ADA disability] . . . ." 29 C.F.R. § 1630.2(j)(3)(iii). The regulations, however, also urge an "individualized assessment" to determine "whether an impairment substantially limits a major life activity." 29 C.F.R. § 1630.2(j)(1)(iv). Thus, the ADA Amendments have not eviscerated the requirement of a case-by-case disability determination, even while now emphasizing that "'[s]ubstantially limits' is not meant to be a demanding standard." 29 C.F.R. § 1630.2(j)(1)(i). Contrary to Son's argument, however, the ADA does not recognize *per se* disabilities. *See Sebest v. Campbell City Sch. Dist. Bd. of Educ.*, 94 F. App'x 320, 326 (6th Cir. 2004) ("[A] disability *per se* would contravene this court's

---

"a physical or mental impairment that substantially limits one (1) or more major life activities of such individual . . . ." KRS 344.010(4). *See also* 42 U.S.C. § 12102(1).

5

'statutory obligation to determine the existence of disabilities on a case-by-case basis.'" (citation omitted)). *See also Lazarus v. Nimcheski*, No. CIV. 11-00279 SOM, 2011 WL 1831742, at *6 (D. Haw. May 11, 2011) ("[M]erely identifying an impairment does not qualify one as a disabled individual."); *EEOC v. LHC Grp., Inc.*, No. 1:11CV355 LG-JMR, 2013 WL 2251742, at *3 (S.D. Miss. May 22, 2013) ("[A] Circuit Court of Appeals recently stated that 'neither the Supreme Court nor this court has recognized the concept of a *per se* disability under the ADA, no matter how serious the impairment; the plaintiff still must adduce evidence of an impairment that has actually and substantially limited the major life activity on which he relies.'" (quoting *Waldrip v. Gen. Elec. Co.*, 325 F.3d 652, 654 (5th Cir. 2003)).

To meet her burden, Son must show that her impairment substantially limits a major life activity. *See* 29 C.F.R. § 1630.2(j)(1)(ii) ("An impairment is a disability within the meaning of this section if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population."). While she has alleged that her epilepsy impairs the major life activity of working, she acknowledges that she missed only one day of work due to epilepsy between her September 2012 diagnosis and the October 2013 termination. (Son Dep. 27:4-7). On that day, she left work early after experiencing an aura, but only on the insistence of the physician she was assisting. (Son Dep. 25:2-13). She also concedes that she was able to perform all the regular functions of her job despite her epilepsy. (Son Dep. 17:17-18:10). Son has identified no other ways in which she was substantially limited from performing her work. Leaving work early one day in the year after her diagnosis does not substantially limit her ability to work as compared to the general population. Many employed persons leave work early for illness and doing so only one time over the course of a year does not constitute a substantial limitation of Son's ability to work.

Nonetheless, construing the evidence in the light most favorable to the non-movant, this Court must conclude that there is a dispute as to Son's disability. There is also little doubt that during a seizure, however infrequent, Son would be unable to perform her job. The regulations indicate episodic impairments substantially limit a major life activity if the impairment would so limit when active. 29 C.F.R. § 1630.2(j)(1)(vii). Son has also asserted that she is unable to adequately perform while experiencing an aura, though she provides no citation to evidence in support of this claim. (Pl.'s Resp. to Mot. for Summ. J. 2). While the regulations emphasize case-by-case determinations, they do tilt the scales when certain illnesses, including epilepsy, are involved. With this opinion's acceptance of Son's epilepsy diagnosis, therefore, Defendants face an uphill battle to overcome Son's disability status. For the purposes of this ruling and without so holding as a matter of law, the Court will consider Son as disabled within the meaning of the KCRA and that Son has met her initial burden.[5]

### 2. *Assuming Son had proven a* **prima facie** *case, Baptist presented evidence of a legitimate, nondiscriminatory basis for terminating her employment.*

Because Son arguably met her initial burden, the Court must then determine whether Defendants articulated a legitimate non-discriminatory reason for the adverse action. *See Seay v. Tenn. Valley Auth.*, 339 F.3d 454, 463 (6th Cir. 2003) (citation omitted). Based upon the Court's review of the record, Defendants have met their burden.

The record reflects that there were performance issues with Son leading up to her termination. (Son Dep. Ex. 3). Her absence from work occurred the same day on which she received counseling for her work performance, and the testimony reflects that Baptist believed

---

[5] While Defendants assert that Son quit and did not suffer an adverse employment action, they point to little evidence. In contrast, Son cited to transcripts of telephone conversations saying she was terminated, an admission in a deposition that she was terminated, and internal paperwork reflecting her termination. (Pl.'s Resp. to Mot. for Summ. J. 10-12). As a result, this Court has little trouble concluding Son suffered an adverse employment action.

that Son had quit. (Son Dep. 67:10-68:25, Ex. 2 at 44). This evidence is sufficient for Baptist to meet its burden of articulating a nondiscriminatory basis for firing Son.

### 3. *Pretext*

Because Baptist provided a nondiscriminatory reason for the termination, Son has the ultimate burden of proving that her employer's stated reason was pretextual. *See Seay*, 339 F.3d at 463. "A plaintiff can demonstrate pretext by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Id.*

Son offers two arguments to prove this reason is a pretext. First, she argues the temporal proximity between her "absence from work due to her disability and termination." (Pl.'s Resp. to Mot. for Summ. J. 12). Temporal proximity between an employer's first notice of an employee's disability and an adverse action can serve as evidence rebutting a proffered reason, but alone is insufficient to prove pretext. *See Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 317 (6th Cir. 2001) (citations omitted). Son told her employer of her disability in September 2012 and she was not fired until October 18, 2013. The passage of roughly 13 months between those events is insufficient to establish temporal proximity.[6] *See id.* (holding that a passage of even six weeks insufficient to establish temporal proximity). Regardless, "even a strong temporal connection, without more, is insufficient to withstand summary judgment." *Holley v. Giles Cnty.*, 165 F. App'x 447, 451-52 (6th Cir. 2005) (citations omitted). Given that Son's disability only minimally affected her work and she never requested any accommodation

---

[6] While Son argues that the Court should look to the date she left work and the decision to terminate her employment the subsequent day, those events are not the proper measure of whether temporal proximity exists because her diagnosis was disclosed approximately 13 months earlier, and Son never told anyone why she was leaving on the day before she was fired.

or leave until after her termination, the one-year gap between her diagnosis and the termination does not support a finding of pretext based upon temporal proximity.

Second, Son argues circumstantial evidence points to discrimination. She claims that Barnes reduced communications, became rude or disrespectful, and rebuffed Son's offers to help. (Son Dep. 40:20-41:5). Son has presented no evidence, however, that this treatment differed from the treatment any other employees received. While she contests the facts giving rise to her counseling session, Son points to no evidence contesting the underlying facts of her counseling session. Additionally, Son does not identify any testimony that suggests discrimination. Essentially, Son's only support for her discrimination claim is her bare assertions in her deposition.

This is not enough to prove Defendants' nondiscriminatory reason is pretext. As the Sixth Circuit has held:

> To show pretext, [a plaintiff] "must submit evidence demonstrating that the employer did not 'honestly believe' in the proffered non-discriminatory reason for its adverse employment action." To inquire into the defendant's honest belief, the court looks to whether the employer can establish "reasonable reliance" on the particularized facts that were before the employer when the decision was made. The key inquiry is whether the employer made a reasonably informed and considered decision before taking adverse action.

*Scott v. Metro. Health Corp.*, 234 F. App'x 341, 346 (6th Cir. 2007) (citations omitted). Here, Son concedes that she left work shortly after her counseling session without informing anyone of her reasons for leaving. (Son Dep. 73:24-74:23). While Son contends she tried to find a person to inform of her intentions, she admits she gave no explanation until the following week. (Son Dep. 74:15-75:22). Significantly, Defendants' documented reason for Son's termination is entirely consistent with Son's actions. Son admits she returned that night to collect some personal effects, while contending she did so only to avoid them being mistakenly discarded. (Son Dep. 83:6-84:18). While accepting Son's explanation for her departure and collection of

9

belongings, the uncontroverted evidence reflects that Son gave her employer the reasonable impression that she was quitting her job.

Son argues Defendants should have inferred she left because of her disability. There is no evidence, however, she told her supervisors that auras might require her to leave early or that they should expect her to do so. Son is unsure whether even Barnes—much less Biven—was aware she previously left work after experiencing an aura. (Son Dep. 26:23-27:7). Aside from Son's contested reports that she told Barnes of these auras and their effect, there is little evidence in the record that Defendants could have inferred Barnes left because of her disability. More importantly, there is no evidence Defendants did actually make such an inference.

Son also has failed to present evidence that Biven and Barnes did not honestly believe that she had abandoned her job. Son "must allege more than a dispute over the facts upon which [her] discharge was based. [She] must put forth evidence which demonstrates that the employer did not 'honestly believe' in the proffered non-discriminatory reason for its adverse employment action." *Braithwaite v. Timken Co.*, 258 F.3d 488, 493-94 (6th Cir. 2001) (citation omitted). The Sixth Circuit explains:

> In deciding whether an employer reasonably relied on the particularized facts then before it, we do not require that the decisional process used by the employer be optimal or that it left no stone unturned. Rather, the key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action.

*Id.* at 494 (quoting *Smith v. Chrysler*, 155 F.3d 799, 807 (6th Cir. 1998)).

It is uncontroverted that Defendants knew that Son had been reprimanded and that she was upset afterwards. Defendants were also aware of Son's unexplained departure from work and that she came back later and removed personal items from the workplace, which indicated to them that Son had walked off the job. Defendants' belief that Son abandoned her job without

10

any offered explanation for her actions provided Defendants the basis to make a "reasonably informed and considered decision" the next day when they terminated Son's employment.

For these reasons, Son has failed to prove pretext. Accordingly, the Court will grant summary judgment to Defendants on Son's disability discrimination claim.

### A.      **Failure to Accommodate**

Son also alleges that Defendants failed to accommodate her disability in violation of KCRA. (Am. Compl. ¶ 23). To establish a *prima facie* claim for failure to accommodate a disability, she must show that: "(1) she is disabled within the meaning of the Act; (2) she is otherwise qualified for the position, with or without reasonable accommodation; (3) her employer knew or had reason to know about her disability; (4) she requested an accommodation; and (5) the employer failed to provide the necessary accommodation." *Johnson v. Cleveland City Sch. Dist.*, 443 F. App'x 974, 982-83 (6th Cir. 2011) (citation omitted). Defendants claim Son cannot make this showing because she is not disabled and did not request an accommodation. While this Court has concluded her disability status might pass the summary judgment standard, Son has offered no evidence that an accommodation was requested.

Son's failure to accommodate claim must be dismissed because she never requested an accommodation. Son has conceded that she made no request for a change in her job responsibilities after her diagnosis, or expected any changes regarding her job. (Son Dep. 18:6-10, 21:5-14). She argues that notifying her supervisor of her diagnosis and its possible side effects should be construed as an implied request for accommodation. An employer, however, "is not required to speculate as to the extent of the employee's disability or the employee's need or desire for an accommodation." *Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1046-47 (6th Cir. 1998). "[I]f the employee never requests an accommodation, the employer's duty to

engage in the interactive process is never triggered." *Judge v. Landscape Forms, Inc.*, No. 14-1362, 592 F. App'x 403, 407 (6th Cir. Nov. 21, 2014) (unpublished) (citation omitted). Because Son made no such request, her failure to accommodate claim must fail. *See Lockard v. Gen. Motors Corp.*, 52 F. App'x 782, 786 (6th Cir. 2002) (holding that an employee failed to prove a prima case of disability discrimination when she failed to request an accommodation). The Court will grant summary judgment to Defendants as to the failure-to-accommodate claim on this basis.

      **B.**     <u>**Retaliation**</u>

Finally, Baptist seeks summary judgment on Son's retaliation claim. In the Amended Complaint, Son alleges that Baptist retaliated against her. (Am. Compl. ¶ 23).

To prove a prima facie case of retaliation, a plaintiff has to prove that "(1) the plaintiff engaged in activity protected under the ADA; (2) the employer knew of that activity; (3) the employer took an adverse action against plaintiff; and (4) there was a causal connection between the protected activity and the adverse action." *Rorrer v. City of Stow*, 743 F.3d 1025, 1046 (6th Cir. 2014) (citation omitted). Based upon the evidence in the record, Son's claim fails because her purportedly protected activity does not qualify as such and because even if it did she cannot show a causal connection between that activity and her termination.

While Son alleged that she was terminated for requesting an accommodation for her disability, the record reflects that that Son was fired before her request. While Son argues that notifying her employer of her diagnosis should be treated as an accommodation request, she has cited no authority to support this argument. Thus, she cannot prove that she engaged in a protected activity. *See Lockard*, 52 F. App'x at 786.

Likewise, she cannot prove any causal link between her purported accommodation request and her termination. As the record reflects, Son only attempted to make an accommodation request after her termination, which is insufficient to prove a causal link. *See Judge v. Landscape Forms, Inc.*, 592 F. App'x 403, 408 (6th Cir. 2014) ("[A]s part of establishing a failure-to-accommodate claim under the ADA, an employee must demonstrate that he or she requested an accommodation before being fired.").

Son cannot prove causation because Biven did not know of Son's diagnosis, and the record reflects that Biven made the decision to terminate Son. (Biven Dep. 29:5-14). Thus, there is no evidence to support any allegation that Biven considered Son's diagnosis in deciding to terminate Son's employment. *See Niles v. Givaudan Flavors Corp.*, 521 F. App'x 364, 368 n.3 (6th Cir. 2014) ("It is equally true that an employee cannot be fired 'on the basis of' his disability unless the individual firing him knows of that disability."). Accordingly, the Court will grant summary judgment on Son's retaliation claim because she failed to prove a *prima facie* claim.

## V. CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment (DN 38) is **GRANTED**. A separate judgment will issue.

**Greg N. Stivers, Judge**
**United States District Court**
September 10, 2015

cc: counsel of record